# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANELLE URATA, | CASE NO. 12cv1277 WQH(WMC) |
| Plaintiff, | ORDER |
| vs. | |
| UNITED STATES OF AMERICA; ALAMO FINANCING, LP, a Delaware limited partnership; DOES 1-50, Inclusive, | |
| Defendants. | |

HAYES, Judge:

The matters before the Court are the Motion to Dismiss Removal and Substitution filed by Plaintiff Janelle Urata (ECF No. 4) and the Motion to Dismiss for Lack of Jurisdiction filed by the United States of America (ECF No. 9).

## BACKGROUND

On July 11, 2011, Plaintiff initiated this action by filing a Complaint against Ileana Munoz ("Munoz") and Alamo Financing, LP in the Superior Court of California for the County of San Diego. (ECF No. 1). Plaintiff asserted claims of motor vehicle and general negligence; Plaintiff alleged that on June 24, 2009, Munoz was driving a vehicle rented from Alamo when she "violated California Vehicle Code section 21658(a) for making an unsafe movement (lane change) colliding with the Plaintiff's vehicle causing it to veer off of the roadway and strike an 'Exit' sign post causing major property damage and severe personal

injuries to Plaintiff." (ECF No. 1-1 at 6).

On March 7, 2012, Plaintiff filed an administrative claim with the United States Navy ("Navy"), which stated:

> Janelle Urata was driving a vehicle on Interstate I-5 South and was struck on the left rear side by a vehicle driven by Ileana Munoz travelling [sic] at approximately 40 mph who swerved into Ms. Urata's vehicle without signalling [sic]. The collision pushed Ms. Urata's vehicle off the road into a freeway sign and down an embankment. Ms. Munoz admitted fault for the collision. Ms. Munoz was in civilian clothing and driving an Alamo rental car. More than two years after the collision, Ms. Urata learned that Ms. Munoz had visited San Diego to perform training with the U.S. Navy and was on active duty at the time of the subject incident.

(ECF No. 9-2 at 16-17).

On May 25, 2012, the United States removed the matter to this Court and filed a Certification of Scope of Employment for Defendant Munoz. (ECF No. 1-3). In the Certification, the United States Attorney, Laura E. Duffy, stated:

> Pursuant to the provisions of 28 U.S.C. § 2679 and pursuant to the authority vested in the United States Attorney to make scope-of-employment certifications under 28 C.F.R. § 15.3, as expressly redelegated to me by the United States Attorney, I hereby certify that I have read the complaint in the above-entitled action, as well as other documentation provided by the Department of the Navy.
>
> On the basis of the information now available, I hereby find and certify that Ileana Munoz, an individually named Defendant, was acting within the scope of her employment as a member of the armed forces of the United States with respect to the incidents alleged in Plaintiff's complaint. Accordingly, pursuant to 28 U.S.C. § 2679(d), the tort claims alleged in the complaint against Ileana Munoz are deemed to have been brought against the United States under the provisions of the Federal Tort Claims Act.

*Id*. at 1.

On June 19, 2012, Plaintiff filed a Motion to Dismiss Removal and Substitution. Plaintiff requested an opportunity to depose Munoz and/or her commanding officer regarding the issue of whether Munoz was acting within the scope of her employment at the time of the incident. (ECF No. 4).

On June 26, 2012, the United States filed a Reply to the Motion to Dismiss Removal and Substitution filed by Plaintiff. (ECF No. 5). The United States submitted a copy of Munoz's travel orders, dated June 18, 2009, which stated that her period of duty would be: "22

JUN 2009 TO 26 JUN 2009 FOR 5 DAYS."  (ECF No. 5-1 at 2).  Munoz's travel orders stated:

> REPORT FOR ACTIVE DUTY FOR TRAINING AOT SPECIAL TO THE COMMANDING OFFICER, NOMI DET NSTI ASTC MIRAMAR, PO BOX 452059, SAN DIEGO, CA 921452059 NO LATER THAN 0700 ON 22 JUN 2009 FOR DUTY WITH SWIM/PHYS REFRESHER COURSE, UIC: 39683.
>
> IF THESE ORDERS START IMMEDIATELY AFTER AN INACTIVE DUTY ORDER (IDTT), YOU ARE ADVISED THAT THESE ORDERS MUST START FROM YOUR HOME ADDRESS (PMA) . FAILURE TO START FROM HOME MAY RESULT IN PAY AND/OR ENTITLEMENT ISSUES WHEN LIQUIDATING YOUR ORDERS....
>
> TRAVEL VIA COMMERCIAL TRANSPORTATION UTILIZING CENTRALLY BILLED ACCOUNTS (CBA) IS DIRECTED. THE COMMERCIAL TRAVEL OFFICE (CTO) WILL PROVIDE YOU WITH ACTUAL TICKETS OR COORDINATE ELECTRONIC TICKETING AS REQUIRED. IF YOU DO NOT EXECUTE THESE ORDERS, RETURN THE ORDERS AND TICKET TO THE ISSUING COMMAND IN PERSON OR BY CERTIFIED MAIL. REIMBURSEMENT FOR YOU PURCHASING YOUR OWN TICKET(S) IS NOT AUTHORIZED. (JFTR U3002, U3125 AND U3140).
>
> RENTAL VEHICLE IS AUTHORIZED (JFTR U3415) AT SAN DIEGO, CA (22 JUN 2009 THRU 26 JUN 2009) COMPACT VEHICLE CLASS.
>
> QUARTERS ARE AVAILABLE AT SAN DIEGO, CA (22 JUN 2009 THRU 26 JUN 2009). IF QUARTERS ARE NOT AVAILABLE CONTACT THE APPROPRIATE MILITARY REPRESENTATIVE FOR A WRITTEN STATEMENT....

*Id.* at 2-3.  The United States submitted a copy of Munoz's rental vehicle agreement with Alamo, which stated that the vehicle was rented by Munoz on June 24, 2009 at 12:02 A.M. at the San Diego Airport; the agreement lists June 26, 2009 at 2:30 P.M. as the scheduled return date.  *Id.* at 6.  The United States submitted a training qualification letter sent to Munoz by the Department of the Navy which stated: "In accordance with reference (a), PO2 ILEANA MUNOZ has received AIRCREW REFRESHER NASTP TRAINING FOR CLASS 4 AIRCRAFT on 25 Jun 2009 at Aviation Survival Training Center MIRAMAR.... PO2 ILEANA MUNOZ received a grade of Q.  All required modules were completed." *Id.* at 11.  The United States submitted a "traffic collision report," which states that the collision between Munoz and Plaintiff occurred on June 24, 2009 at 12:30 A.M. on "I-5 S/B ... .1 MILE(S) NORTH OF SR-163" in San Diego.  *Id.* at 5-1 at 9.

On July 12, 2012, the Court issued an Order which stated: "Plaintiff may depose Munoz

and/or her commanding officer regarding the issue of whether Munoz was acting within the scope of her employment at the time of the incident. The parties are referred to the Magistrate Judge for any discovery disputes." (ECF No. 7 at 3). The Court permitted supplemental briefing regarding the Certification of Scope of Employment for Defendant Munoz, stating: "Plaintiff may file a supplemental brief no later than 60 days from the date of this order. Defendants may file a supplemental reply no later than 75 days from the date of this order." *Id.*

On July 17, 2012, the United States filed a Motion to Dismiss for Lack of Jurisdiction. (ECF No. 9). On August 6, 2012, Plaintiff filed a Response. (ECF No. 11). On August 13, 2012, the United States filed a Reply. (ECF No. 12).

On September 10, 2012, Plaintiff submitted a Supplemental Response to the Reply to the Motion to Dismiss Removal and Substitution filed by the United States. (ECF No. 13). Plaintiff submitted the written deposition of Munoz, containing questions and written responses, which stated in part:

> ...
> WRITTEN DEPOSITION QUESTION NO. 2
> Were YOU paid for YOUR travel time from Hawaii to San Diego to participate in the COURSE?
> ANSWER TO DEPOSITION QUESTION NO. 2
> Yes, I was paid continuously from the time I boarded my flight from Hawaii until the time I landed back in Hawaii and was deactivated. I also received base pay and per diem for this time.
>
> WRITTEN DEPOSITION QUESTION NO. 3
> Where did the COURSE take place?
> ANSWER TO DEPOSITION QUESTION NO. 3
> MCAS Miramar, San Diego, California
>
> WRITTEN DEPOSITION QUESTION NO. 4
> Were YOU given any free time while in San Diego before or after the COURSE? If yes, what did YOU do on YOUR free time?
> ANSWER TO DEPOSITION QUESTION NO. 4
> I had no free time before the course. I had no free time after the course....
>
> WRITTEN DEPOSITION QUESTION NO. 7
> Who booked YOUR plane flight and travel plans from Hawaii to San Diego for the COURSE?
> ANSWER TO DEPOSITION QUESTION NO. 7
> The command Order Writer for VF-15 booked my flight, vehicle, and lodging. When the Order Writer handed me my itinerary, I requested an earlier departing flight, and was told there were no earlier flights I could be booked on.

> WRITTEN DEPOSITION QUESTION NO. 8
> What instructions were given to you by any military personnel regarding the trip to and from the COURSE?
> ANSWER TO DEPOSITION QUESTION NO. 8
> The Order Writer handed me a set of orders instructing me to report to the course at MCAS Miramar and an itinerary with air, vehicle, and lodging reservations. I had no choice in flights or vehicle rental....
>
> WRITTEN DEPOSITION QUESTION NO. 9
> Did any military personal acting on behalf of the U.S. government instruct YOU on which route to take or give you directions to MCAS Miramar?
> ANSWER TO DEPOSITION QUESTION NO. 9
> My orders told me only that I was to report at MCAS Miramar for the course. For my convenience, a short set of written directions were also given to me. These were not instructions or orders....

(ECF No. 13-1 at 3-5). Plaintiff submitted a written deposition of Munoz's commanding officer, Hobie Anderson, containing questions and written responses, which stated in part:

> WRITTEN DEPOSITION QUESTION NO. 1
> Who booked DEFENDANT's plane flight and travel plans to San Diego for the COURSE prior to SUBJECT INCIDENT?
> ANSWER TO DEPOSITION QUESTION NO. 1
> I do not know. At that time, the US Navy made travel plans using DTS (Defense Travel System). Ms. Munoz would most likely have booked her travel by inputting her travel on the DTS website, and selecting travel at the government rate. After she made her DTS reservations, at least two supervisors, the command travel clerk and then the command operations officer, would have reviewed it for final approval....
>
> WRITTEN DEPOSITION QUESTION NO. 3
> Was DEFENDANT instructed to use Alamo Rental Agency for a rental car?
> ANSWER TO DEPOSITION QUESTION NO. 3
> Not that I am aware of. Ms. Munoz was instructed to have a rental vehicle, if she had used a taxi or shuttle service for the duration of her training it would have cost the command significantly more, and she would not have been reimbursed for such bills. She most likely made her rental vehicle reservation through the DTS system, which would have required her to book a rental vehicle at a government contract rate.
>
> WRITTEN DEPOSITION QUESTION NO. 4
> Was DEFENDANT given any free time while in San Diego before or after the COURSE?
> ANSWER TO DEPOSITION QUESTION NO. 4
> No. Reservists were not given any free time before or after the course. If Ms. Munoz had wanted to take leave, she would have needed to submit a request chit through the command, and I do not believe she made any requests for personal time. Ms. Munoz was ordered to go to MCAS Miramar, fully participate in the course, and then report back to Hawaii. Her midnight flight does not indicate that she had free or personal time, and the flight does not surprise me. Ms. Munoz likely had obligations to complete before departing Hawaii, and also had to cross several time zones in traveling from Hawaii to arrive in California.
>
> WRITTEN DEPOSITION QUESTION NO. 5
> Did DEFENDANT's normal military duties include driving a motor vehicle?

<u>ANSWER TO DEPOSITION QUESTION NO. 5</u>
Yes. Often, the enlisted servicemembers at our command, including Ms. Munoz, had duty driver responsibilities. And on training events such as this, it was also part of her military duties to rent a vehicle, transport herself to and from class, and then return to the command....

<u>WRITTEN DEPOSITION QUESTION NO. 8</u>
What were DEFENDANT's normal working hours while on active duty?
<u>ANSWER TO DEPOSITION QUESTION NO. 8</u>
As an active duty servicemember, Ms. Munoz's working hours ran twenty four hours a day. She had an obligation to comply with requests and orders to her at any given hour. More specifically, as a Navy air crewman, she had nothing similar to civilian 'normal working hours.' Air crewman work at all hours, and are often on missions that go through the night.

<u>WRITTEN DEPOSITION QUESTION NO. 9</u>
Did the U.S. government and/or the military derive any benefit from DEFENDANT while driving the vehicle on June 24, 2012 at the time of SUBJECT INCIDENT?
<u>ANSWER TO DEPOSITION QUESTION NO. 9</u>
Yes. The Navy's benefit was in getting a qualified air crewman. This course was a requirement for air crewmen every four years, and could not be waived. If Ms. Munoz hadn't been able to travel to the training, complete it, and return, then she would have been useless to the Navy. Further, the command did not have any extra members, and would have been greatly burdened if she had become unqualified to do her job.

<u>WRITTEN DEPOSITION QUESTION NO. 10</u>
To what extent does the U.S. government/military routinely reimburse the costs of travel for military personal who train outside of their stationed based?
<u>ANSWER TO DEPOSITION QUESTION NO. 10</u>
The military covers all permitted expenses for such travel. This includes travel, lodging, and per diem....

(ECF No. 13-1 at 8-10). On September 25, 2012, the United States filed a Supplemental Reply. (ECF No. 14).

## ANALYSIS

**I.    Motion to Dismiss Removal and Substitution filed by Plaintiff**

**A.    Applicable Standard**

"The Federal Tort Claims Act waives the sovereign immunity of the United States and provides a cause of action against the government for persons injured as a result of 'the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under the circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Nationwide Mut. Ins. Co. v. Liberatore*, 408 F.3d 1158, 1163

(9th Cir. 2005) (quoting 28 U.S.C. § 1346(b)(1)).  A district court may review the certification of the United States that a federal employee was acting within the scope of his employment. *Gutierrez de Martinez v. Lamagno,* 515 U.S. 417, 436-37 (1995); *see also Osborn v. Haley*, 549 U.S. 225, 247 (2007) ("[A] complaint's charge of conduct outside the scope of employment, when contested, warrants immediate judicial investigation. Were it otherwise, a federal employee would be stripped of suit immunity not by what the court finds, but by what the complaint alleges.") (citation omitted).  "Certification by the Attorney General is prima facie evidence that a federal employee was acting in the scope of [his] employment at the time of the incident and is conclusive unless challenged." *Billings v. United States*, 57 F.3d 797, 800 (9th Cir. 1995) (citing *Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1993)).  "The party seeking review bears the burden of presenting evidence and disproving the Attorney General's certification by a preponderance of the evidence." *Billings,* 57 F.3d at 800.

### B.     Contentions of the Parties

Plaintiff asserts that the United States was improperly substituted as a defendant and that this action must be remanded to California Superior Court, County of San Diego. Plaintiff contends that "there is sufficient evidence that Ms. Munoz was not acting within the scope of her employment" (ECF No. 13 at 1) because Munoz was "essentially off the clock when the incident occurred." (ECF No. 4 at 5).  Plaintiff asserts that Munoz "was not on active duty until she reported to the commanding officer at MCAS."  (ECF No. 13 at 3).

The United States contends that Munoz was acting within the scope of her employment, pursuant to a travel order.  (ECF No. 5 at 3).  The United States asserts that Munoz was "traveling on direct orders of [her] employer and for the sole purpose of serving [her] employer's business; that [she] was traveling on the most direct route between two of [her] employer's work locations; that [she] was using an expressly authorized means of transportation; that [she] was driving during regular working hours; and that [she] was being paid [her] regular salary plus per diem, plus costs of transportation." *Id.* at 3-4.

### C.     Discussion

"Whether a member of the armed services of the United States was acting within the

scope of his employment at the time of an alleged negligent or wrongful act depends on whether the individual was 'acting in line of duty.'" *Nationwide Mut. Ins. Co.*, 408 F.3d at 1163 (quoting 28 U.S.C. § 2671). In order to determine whether a servicemember was "acting in the line of duty," a district court reviews the scope of employment determination under the principles of respondeat superior of the state in which the tort allegedly occurred. *McLachlan v. Bell*, 261 F.3d 908, 911 (9th Cir. 2001); *see also Lutz v. Sec'y of the Air Force*, 944 F.2d 1477, 1488 (9th Cir. 1991) ("The scope of employment inquiry, including, in the military context, whether the employee was 'acting in line of duty,' is defined by the applicable state law of respondeat superior.").

"Under California's law of respondeat superior, employers are liable for acts of their employees occurring within the scope of their employment." *Nationwide Mut. Ins. Co.*, 408 F.3d at 1163. The California Supreme Court has held that an employee is acting within the scope of employment:

> ... when in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business. In other words, where the question is one of vicarious liability, the inquiry should be whether the risk was one that may fairly be regarded as typical of or broadly incidental to the enterprise undertaken by the employer.

*Farmers Ins. Group v. County of Santa Clara*, 11 Cal.4th 992, 47 Cal.Rptr.2d 478, 906 P.2d 440, 448 (1995). "A related approach is to ask whether the tort was, in a general way, foreseeable from the employee's duties." *Jeewarat v. Warner Bros. Entm't, Inc.*, 177 Cal. App. 4th 427, 435 (2009) (citation omitted); *see also Xue Lu v. Powell,* 621 F.3d 944, 948 (9th Cir. 2010) ("A nexus must exist between the employment and the tort if the employer is fairly to be held liable."). However, an employer will not be held liable for an employee's conduct "if the employee substantially deviates from the employment duties for personal purposes." *Farmers Ins. Group*, 906 P.2d 440, 448.

"An offshoot of the doctrine of respondeat superior is the so-called 'going and coming rule.' Under this rule, an employee is not regarded as acting within the scope of employment while going to or coming from the workplace." *Baptist v. Robinson*, 143 Cal. App. 4th 151, 162 (2006). An exception to the "going and coming rule" is known as the "special errand" or

"special mission" rule. " *Jeewarat*, 177 Cal. App.at 427. The special errand rule "holds an employer vicariously liable for accidents occurring while an employee is engaged in a special errand for the employer, including the employee's commute to or from the special errand." *Id.*; *see also LeElder v. Rice*, 21 Cal.App.4th 1604, 1607 (1994) (under the "special errand" rule, "it is necessary to determine the main purpose of injury-producing activity: If it was the pursuit of the employee's personal ends, the employer is not liable."); *Purcell v. United States*, 130 F.Supp. 882 (N.D. Cal. 1955) (finding that a servicemember was acting within the scope of his employment when he crashed his vehicle while driving enroute to a school for temporary training pursuant to his orders); *but see also Chapin v. United States*, 258 F.2d 465, 468 (1958) (holding that a servicemember "traveling between permanent duty stations is [traveling] 'merely during employment' and not within the scope of employment.").

In this case, the parties do not dispute that the Navy ordered Munoz, a Navy reservist, to report to the Marine Corps Air Station at Miramar for a training exercise that was to take place between June 22, 2009 and June 26, 2009. In her written deposition, Munoz stated that she was paid continuously from the time she boarded her flight to San Diego until she returned to Hawaii and that the Navy booked and reimbursed the costs of her rental vehicle and hotel room in San Diego. (ECF No. 13-1 at 3-5). Munoz's commanding officer, Hobie Anderson, stated in a written deposition that "Ms. Munoz's working hours ran twenty four hours a day" and that "it was ... part of her military duties to rent a vehicle [and] transport herself to and from class...." Id. at 8-10. Munoz's orders stated that her "period of duty" was to be June 22, 2009 through June 26, 2009 and that "[u]pon completion of subject duty, with the exception of back to back orders, you will return to the address indicated after your name and upon arrival you will stand released from subject duty." (ECF No. 5-1 at 2).

At the time of the accident, Munoz was acting pursuant to specific Navy orders that directed her to travel from her home to a temporary duty station; there is no evidence in the record that Munoz substantially deviated from her Navy duties for personal purposes. Based upon these facts, the Court finds that Munoz's actions fall under the special errand exception to the going and coming rule. *See Felix v. Asai*, 192 Cal.App.3d 926, 931 (1987) ("An

employee 'coming from his home or returning to it on a special errand either as part of his regular duties or at a specific order or request of his employer ... is considered to be in the scope of his employment from the time that he starts on the errand until he has returned or until he deviates therefrom for personal reasons.'").

The Court concludes that the risk of an accident under the facts of this case was "typical of or broadly incidental to the enterprise undertaken" by the Navy and that Munoz was acting "in the line of duty," i.e. within the scope of her employment, when the accident occurred. *Farmers Ins. Group*, 11 Cal.4th at 992; *Nationwide Mut. Ins. Co.*, 408 F.3d at 1163. Plaintiff has failed to meet her burden "of presenting evidence and disproving the Attorney General's certification by a preponderance of the evidence." *Nationwide Mut. Ins. Co.*, 408 F.3d at 1163; *see also Jeewarat*, 177 Cal. App. 4th at 434 ("Whether an employee was acting within the course and scope of his employment is generally a question of fact, but if the facts are undisputed and no conflicting inferences are possible, the question is one of law."). The United States of America shall remain substituted as a defendant in place of Defendant Ileana Munoz. *See* 28 U.S.C. § 2679(d).

**II.     Motion to Dismiss for Lack of Jurisdiction**

    **A.     Applicable Standard**

"A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). Rule 12(h)(3) of the Federal Rules of Civil Procedure provides: "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). In determining the presence or absence of federal jurisdiction, the court applies the "'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004) (quoting *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987)). When assessing subject matter jurisdiction, the court assumes the truth of all allegations in the complaint. *See Castaneda v. United States*, 546 F.3d 682, 684 n.1 (9th Cir. 2008). Subject

matter jurisdiction must exist at the time the action is commenced and must be disclosed in the complaint. *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization,* 858 F.2d 1376, 1380 (9th Cir. 1988). "If jurisdiction is lacking at the outset, the district court has 'no power to do anything with the case except dismiss.'" *Id.* (internal quotation omitted).

**B.     Contentions of the Parties**

The United States contends that Plaintiff's claim is barred by the statute of limitations and that this Court lacks jurisdiction. The United States asserts that Plaintiff's claim accrued at the time of the collision on June 24, 2009, over two years before Plaintiff filed her March 7, 2012 administrative claim. *Id.* Plaintiff contends that the Civil Servicemembers Relief Act ("SCRA") "supercedes" 28 U.S.C. section 2401(b) and "exclud[es] military service from the computation of the statute of limitations." (ECF No. 11 at 3). Plaintiff asserts that her administrative claim was timely if Munoz's active service is excluded from the statute of limitations computation. *Id.* at 5. The United States contends that the SCRA does not apply on the grounds that the United States has replaced Munoz as the only Defendant in this case and "Plaintiff has no 'action ... against any person in military service.'" (ECF No. 12 at 8).

**C.     Discussion**

Generally, the United States and its agencies may not be sued in federal court unless Congress has waived sovereign immunity. *United States v. Dalm*, 494 U.S. 596, 608 (1990) ("[T]he United States, as sovereign, is immune from suit, save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit" (internal quotation marks omitted)). The Federal Tort Claims Act ("FTCA") represents a waiver of the sovereign immunity of the United States, and, as such, must be strictly construed. *U. S. v. Kubrick*, 444 U.S. 111 (1979); *see also Marley v. United States*, 567 F.3d 1030, 1034 (9th Cir. 2009). In order to bring a tort claim against the United States under the FTCA, potential plaintiffs must file an administrative claim with the appropriate federal agency. 28 U.S.C. 2675(a). "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues...." 28 U.S.C. § 2401(b); *see also Kubrick*, 444 U.S. at 111 (explaining that the

FTCA "bars any tort claim against the United States unless it is presented in writing to the appropriate federal agency 'within two years after such claim accrues.'").

### 1. Accrual of Plaintiff's FTCA Claim

A claim accrues under 28 U.S.C. section 2401(b) when "the plaintiff knows both the existence and the cause of his injury...." *Kubrick*, 444 U.S. at 111. In this case, the damage to Plaintiff's vehicle was immediately apparent after the accident. The United States submitted a "traffic collision report" which states that Munoz was the driver of the vehicle that collided with Plaintiff. Plaintiff's claim accrued on June 24, 2009, when her alleged injury occurred. *See Hensley v. United States*, 531 F.3d 1052, 1056 (9th Cir. 2008) (holding that a tort claim accrues when plaintiff knows or had reason to know of his injury and that "ignorance of the involvement of government employees is irrelevant to accrual of a federal tort claim.").

### 2. Civil Servicemember Relief Act

The SCRA provides:

> The period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court, or in any board, bureau, commission, department, or other agency of a State (or political subdivision of a State) or the United States by or against the servicemember or the servicemember's heirs, executors, administrators, or assigns.

50 App. USCA § 526.

In this case, the United States has replaced Munoz as the sole defendant and Plaintiff's exclusive remedy is against the United States. *See* 28 U.S.C. § 2679(b) (explaining that the remedy against the United States under the FTCA "is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim"); *see also Lance v. United States*, 70 F.3d 1093, 1095 (9th Cir. 1995) ("The United States is the only proper defendant in an FTCA action."); *Woods v. United States*, 720 F.2d 1451, 1452 n. 1 (9th Cir. 1983). The Court concludes that the SCRA does not toll Plaintiff's claim because neither Plaintiff nor the United States constitute a "servicemember or ... [that] servicemember's heirs, executors, administrators, or assigns." 50 App. USCA § 526; *see also Miller v. United States*, 803 F. Supp. 1120. 1130 (E.D. Va. 1992) ("[T]he military personnel who were allegedly negligent have complete

immunity from suit, thus there is no military official who is primarily liable for the damages claimed by the [plaintiffs]. The only defendant the [plaintiffs] can sue for the alleged negligence is the United States, a party to which the underlying policies of the []SCRA have no application. The Court holds that the []SCRA's tolling provisions do not apply to the time limitations period for [plaintiff]'s claims.").

### 3. Timing of Plaintiff's FTCA Claim

The two-year statute of limitations pursuant to 28 U.S.C. section 2401(b) expired on June 24, 2011, over eight months before Plaintiff filed her March 7, 2012 administrative claim with the Navy. (ECF No. 9-2 at 16-17); 28 U.S.C. § 2401(b).[1] The Court concludes that Plaintiff's FTCA claim is barred by the statute of limitations and the United States has not waived its sovereign immunity. *See Marley*, 567 F.3d at 1038. The Court lacks subject matter jurisdiction and the motion to dismiss is granted. *See Brady v. United States*, 211 F.3d 499, 502 (9th Cir. 2000) (finding that the requirement to file an administrative claim before filing an FTCA suit is jurisdictional).

### CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss Removal and Substitution filed by Plaintiff Janelle Urata (ECF No. 4) is DENIED. The Motion to Dismiss for Lack of Jurisdiction filed by the United States (ECF No. 9) is GRANTED. The Clerk shall remand this case to Superior Court of California for the County of San Diego to permit Plaintiff to pursue her tort claim against the remaining defendant, Alamo Financing, LP.

DATED: December 13, 2012

**WILLIAM Q. HAYES**
United States District Judge

---

[1] Under 28 U.S.C. section 2679(d)(5), "an action that is removed to federal court generally is considered timely if the administrative claim would have been timely had the claim been filed on the date of commencement of the state action." *Hensley v. United States*, 531 F.3d 1052, 1055 n. 2 (9th Cir.2008) (citing 28 U.S.C. § 2679(d)(5)). This action cannot be saved by 28 U.S.C. section 2679(d)(5) because Plaintiff's state court action was filed on July 11, 2011, outside of the statute of limitations period. *See* 28 U.S.C. § 2679(d)(5).